IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-cv-01964-MSK

PAMELA ORTIVIZ,

 Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

 Defendant.

## OPINION AND ORDER REVERSING AND REMANDING
## THE COMMISSIONER'S DECISION

**THIS MATTER** comes before the Court on the Plaintiff's Complaint **(# 1)**, the Plaintiff's Opening Brief **(# 23)**, the Defendant's Response **(# 24)**, and the Plaintiff's Reply **(#25)**. For the following reasons, the Commissioner's decision is reversed, and the matter is remanded for further proceedings.

## I. JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

## II. BACKGROUND

### A. Procedural History

Plaintiff Pamela Ortiviz ("Ms. Ortiviz") seeks judicial review of a final decision by the Defendant Commissioner ("Commissioner") denying both her claim for disability insurance

1

benefits ("DIB") and application for supplemental security income ("SSI") under the Social Security Act. In February 2015, Ms. Ortiviz filed for DIB, claiming she became disabled as of February 1, 2009. **(# 16-5 at 178; # 16-6 at 200)**. In April 2015, Ms. Ortiviz filed for SSI. **(#16-5 at 180)**. Her initial application was denied, and she requested an administrative hearing. Following a hearing before an Administrative Law Judge ("ALJ"), Ms. Ortiviz received an unfavorable decision in August 2017 ("Decision"). **(# 16-2 at 13-24)**. Ms. Ortiviz appealed that Decision to the Appeals Council. However, on June 23, 2018, the Appeals Council denied her Request for Review. **(# 16-2 at 1)**. Ms. Ortiviz now appeals the final agency action to this Court.

**B. Factual Background**

The Court offers a brief summary of the facts here and elaborates as necessary in its discussion. Also, because the dispositive issue in this appeal concerns the weight given to medical source opinions as to Ms. Ortiviz's mental impairment, noting that there is no opinion from any treating source, the Court summarizes only the medical opinion evidence relevant to its decision.

At the time of her alleged onset of disability, Ms. Ortiviz was 39 years old. **(# 16-3 at 76)**. However, on the date of the administrative hearing before the ALJ, she was 47 years old. **(# 16-2 at 36)**. Ms. Ortiviz left high school in the 11th grade, but she received her GED or High School Equivalency Certificate in 1997. **(# 16-2 at 36)**. She was previously employed in customer service and general labor positions. **(# 16-6 at 204, 479)**.

In July 2015, Mary Ann Wharry, Psy.D., a State agency psychological consultant, reviewed Ms. Ortiviz's records related to her DIB claim at the initial agency level and completed

a mental residual functional capacity assessment ("RFC") and a psychiatric review technique

("PRT")[1]. **(# 16-3 at 88-89, 91-93)**. Specifically, Dr. Wharry reviewed Ms. Ortiviz's medical records from Parkview Medical Center, Pueblo Health Community Health Center, Spanish Peaks Behavioral Health Centers, and Denver Health Medical Center and noted Ms. Ortiviz's diagnoses of anxiety, depression and alcohol abuse and related mental health treatment. **(# 16-3 at 89)**. Based on that review, Dr. Wharry opined that due to Ms. Ortiviz's "motivation" and "anxiety," she has moderate limitations in the following areas of functional abilities: concentration and persistence; social interactions; and adaptation capabilities. **(# 16-3 at 91-93)**. Dr. Wharry concluded that Ms. Ortiviz

> retains [the] mental ability to do work not involving significant complexity and judgment; can do work requiring up to 3 months time to learn techniques, acquire information and develop facility needed for an average job performance, can respond appropriately to supervision, coworkers if contact is not frequent or prolonged; must have minimal to no interaction with the general public; can deal with changes in a routine work setting.

**(# 16-3 at 93)**.

---

[1] Pursuant to the Commissioner's regulations, the "psychiatric review technique," or "PRT" is used to evaluate mental impairments. The so-called "paragraph B" and "paragraph C" criteria are used to describe adult mental disorders. *See generally* 20 C.F.R. §§ 404.1520a(c)–(d); *see also* Social Security Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996). The regulations identify four functional areas in which a claimant's functional limitations will be rated, including: (1) the ability to understand, remember or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). Once a claimant's degree of functional limitation is rated, the severity of a mental impairment is determined. If a claimant's limitation is found to be "mild," the impairment is generally found to be not severe. However, if the mental impairment is severe, then it is determined whether it meets or is equivalent to a listed mental disorder. If the claimant has a severe mental impairment that does not meet or is not equivalent in severity to any listing, the claimant's RFC is then assessed. 20 C.F.R. § 404.1520a(d).

On August 9, 2016, Ms. Ortiviz saw Richard Madsen, Ph.D., a consulting examiner, for a psychological evaluation. **(# 16-10 at 477-484)**. Dr. Madsen administered the Wechsler Adult Intelligence Scale-Fourth Edition test (to measure Ms. Ortiviz's intellectual functioning) and conducted a clinical interview. **(# 16-10 at 477)**. Dr. Madsen observed Ms. Ortiviz's affect to be anxious, depressed, and tearful. **(# 16-10 at 479)**. Ms. Ortiviz was able to recall the current date, but her thoughts "appear[ed] to be racing and she appears paranoid." **(# 16-10 at 479)**. Ms. Ortiviz received a "Full Scale IQ of 78," which is in the "borderline range of measured intelligence." **(# 16-10 at 480)**. In his report, under the heading "Review of Records," Dr. Madsen noted that Ms. Ortiviz's attorney had given him Ms. Ortiviz's medical "records from Pueblo Community Health Center indicating that [Ms. Ortiviz] was seen there for depression in February of 2015. [The records] also indicated that she has chronic pain. There were also progress notes from Spanish Peaks Mental Health Center/Health Solutions documenting her treatment for depression and PTSD." **(# 16-10 at 479)**. Based on his examination, Dr. Madsen diagnosed Ms. Ortiviz with the following: bipolar disorder; post-traumatic stress disorder ("PTSD"); panic disorder with agoraphobia; episodic alcohol abuse; borderline intellectual functioning; and a developmental learning disorder. **(# 16-10 at 480)**. Dr. Madsen completed an RFC and opined that Ms. Ortiviz was: severely limited in the ability to understand and remember detailed instructions; severely limited in most areas of the ability to sustain concentration and persistence; moderately limited in most areas of social interaction; and moderately limited in most areas of adaptation. **(# 16-10 at 482-483)**. Dr. Madsen ultimately concluded Ms. Ortiviz's ability to do work related activities is "impaired," and "she will have difficulty maintaining a regular work schedule, focusing and concentrating on work and relating

4

to peers, coworkers, supervisors and the general public." **(# 16-10 at 481)**.

At the hearing before the ALJ held on May 30, 2017, Robert Pelc, Ph.D., testified telephonically as an impartial medical expert. Dr. Pelc did not examine or treat Ms. Ortiviz. Rather, he reviewed her medical records and listened to her hearing testimony before testifying to his medical opinions. **(# 16-2 at 35, 610)**. Dr. Pelc opined that Ms. Ortiviz had severe and persistent mental impairments. **(# 16-2 at 61)**. He found Ms. Ortiviz to be moderately impaired in the following functional abilities: ability to understand; ability to remember and apply information; ability to interact with others; ability to concentrate, persist, and maintain pace; and the ability to adapt. **(# 16-2 at 59-61)**. Dr. Pelc also opined Ms. Ortiviz was "markedly impaired" with respect to interacting with the general public. **(# 16-2 at 59)**.

**C.     The ALJ's Decision**

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). SSI is available to an individual who is financially eligible, filed an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for a least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 215 (2002). The claimant must also prove she was disabled prior to her date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2008).

To determine disability, the ALJ analyzed this case pursuant to the sequential five-step inquiry. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1998) (explaining the five steps in detail). On August 15, 2017, the ALJ issued a Decision unfavorable to Ms. Ortiviz. At step one, the ALJ found she had not engaged in substantial gainful activity since February 1, 2009. **(# 16-2 at 16)**. At step two, the ALJ found Ms. Ortiviz had the following severe impairments: bipolar disorder, depression, anxiety disorder, PTSD, panic disorder, borderline intellectual functioning, learning disorder, polysubstance abuse, hepatitis C, and cirrhosis. **(# 16-2 at 16)**. At step three, the ALJ found Ms. Ortiviz did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. **(# 16-2 at 16-18)**. The ALJ then assessed Ms. Ortiviz's RFC and determined that:

> [Ms. Ortiviz] has the residual functional capacity to perform light work as defined in 20 §§ C.F.R. 404.1567(b) and 416.967(b) except the claimant can occasionally climb ladders, ropes, scaffolds, ramps and stairs, and constantly balance. The claimant can occasionally stoop, crouch, kneel and crawl. The claimant is further limited in that she must avoid all driving of motor vehicles at work. She is further limited to work that consists of only simple, routine and repetitive tasks, and to work in a low stress job, defined as not requiring the worker to cope with work related circumstance that could be dangerous to the worker or others. The claimant is able to maintain sufficient concentration and attention for extended periods of two-hour segments during a normal workday, with normal breaks, but only in work that consists of only simple, routine and repetitive tasks. The claimant is further limited to work that requires no interaction with the public, and to work that requires no more than occasional interaction with coworkers and supervisor[s]. She is further limited to work that requires no more than occasional supervision, defined as requiring a supervisor's critical checking of her work.

**(# 16-2 at 19)**. In crafting Ms. Ortiviz's RFC, the ALJ gave no weight to Dr. Wharry's opinion, minimal weight to Dr. Madsen's opinion and significant weight to Dr. Pelc's opinion. **(# 16-2 at 21-22)**. At step four, the ALJ found Ms. Ortiviz had no past relevant work. **(# 16-2 at 22)**.

At step five, the ALJ concluded that, considering Ms. Ortiviz's age, education, work experience, and RFC, she could perform the following jobs in the national economy: laundry worker, collator operator, and small product assembler. **(# 16-2 at 23)**.

### III. STANDARD OF REVIEW

Though the Court's review is *de novo*, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may not reweigh the evidence, it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

### IV. DISCUSSION

By this appeal, Ms. Ortiviz argues that the ALJ erred by (1) improperly weighing the medical source opinions of record and (2) improperly concluding that her mental impairments did not meet or medically equal the presumptively disabling conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 at 12.04 and 12.06. Because the first argument is dispositive and requires remand, the Court will focus on it. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (declining to address remaining issues on appeal as "they may be affected by the ALJ's treatment of this case on remand.").

A treating physician's opinion is generally entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not

7

inconsistent with the other substantial evidence in [the] case record." *Romo v. Commissioner*, 748 Fed. Appx. 182, (10th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2))[2]; *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). But, if there is no controlling opinion, the ALJ must assign comparative weight of any conflicting opinions offered by consulting examiners in light of the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (internal quotations omitted); *Allman v. Colvin*, 813 F.3d 1326, 1331-32 (10th Cir. 2016). A consulting examiner's opinion is presumptively entitled to more weight that an opinion derived from a review of the records. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). The ALJ may dismiss or discount an examining physician's opinion but he or she must do so based on the foregoing factors and must provide specific, legitimate reasons for doing so. *Id.*

Here, Ms. Ortiviz argues that the ALJ improperly rejected both Dr. Madsen's opinion and Dr. Wharry's opinion. The Court agrees. As discussed above, the ALJ gave Dr. Madsen's opinion minimal weight while giving Dr. Pelc's opinion significant weight. Dr. Pelc's opinion

---

[2] Pursuant to a change in the Social Security Administration's regulations, effective March 27, 2017, the consideration of medical opinions will be governed by different factors. However, the prior rule remains applicable to claims—like Ms. Ortiviz's—filed before that date. Rescission of Social Security Rulings 96–2P, 96–5P, and 06–3P, 2017 WL 3928298, at *1 (2017).

was solely based on a review of the records and listening to Ms. Ortiviz's hearing testimony; he never saw nor treated Ms. Ortiviz. In contrast, Dr. Madsen's opinion was based on a detailed examination of Ms. Ortiviz, involving the administration of a "Full Scale IQ" test and a clinical interview. **(# 16-10 at 477-484)**. However, the ALJ's Decision determined that Dr. Madsen's opinion was only entitled to "minimal weight," because "[i]t does not appear that the doctor reviewed all the claimant's medical records or that he treated the claimant." **(# 16-2 at 22)**. While it is true that Dr. Madsen did not treat Ms. Ortiviz, the ALJ's statement that he did not review her records is inaccurate. In his report, Dr. Madsen specifically set forth a paragraph titled "REVIEW OF RECORDS," which indicated that in formulating his opinion, he reviewed Ms. Ortiviz's "records from Pueblo Community Health Center" related to her depression and chronic pain and "progress notes from Spanish Peaks Mental Health Center/Health Solutions" that documented Ms. Ortiviz's treatment for depression and PTSD. **(#16-10 at 479)**. Indeed, the Commissioner's own regulations state that more weight is generally given to the "medical opinion of a source who has examined [the claimant] [rather] than to the medical opinion of a medical source who has not examined [the claimant]." 20 C.F.R. § 416.927(c)(1). Thus, the ALJ's reasons for discrediting Dr. Madsen's opinion in favor of Dr. Pelc's opinion constitute legal error and not supported by substantial evidence.[3]

---

[3] Certainly, if the ALJ found Dr. Madsen's report to be unclear as to whether he reviewed the medical records, "the onus was on the ALJ to recontact [Dr. Madsen] for further clarification." *Gonzales v.* Colvin, 69 F. Supp. 3d 1163, 1170 (D. Colo. 2014) (citing 20 C.F.R. § 416.927(c)(3)). In fact, Dr. Madsen concluded his report by noting, "[i]f I may be of any further assistance to you in this matter, please feel free to contact me." **(# 16-10 at 481)**.

Even more egregious, however, is the ALJ's inexplicable decision to give "no weight" to Dr. Wharry's RFC "because it is agency policy that findings made by SDM's [Single Decision Makers] are not opinion evidence that Administrative Law Judges should consider and address in their opinion." **(# 16-2 at 22)**. The record is clear that Dr. Wharry is a licensed psychologist who was hired by the State agency to evaluate Ms. Ortiviz's mental impairments and render an RFC. **(# 16-2 at 88-89, 93-94)**. The ALJ clearly erred in rejecting Dr. Wharry's opinion on the incorrect assumption that she was an SDM and not an acceptable medical source. *See* 20 C.F.R. § 404.1513(a). Further, the Commissioner's regulations require the ALJ to consider every medical opinion of record. 20 C.F.R. § 404.1527(c); *see also Hamlin v. Barnhardt*, 365 F.3d 1208, 1215 (10th Cir. 2004). The legal error in giving Dr. Wharry's opinion "no weight" constitutes error *per* se, thus, the Court rejects out of hand the Commissioner's argument that any error in this regard is harmless.

The Court finds the ALJ's evaluation of the record's medical source opinions contravenes applicable legal standards and is not supported by substantial evidence. Thus, the finding that Ms. Ortiviz is not disabled is reversed, and the matter is remanded for reconsideration on steps three, four, and potentially five of the sequential analysis, applying the proper legal standards to the medical source opinions of Dr. Wharry, Dr. Madsen, and Dr. Pelc. The Court expresses no opinion as to the ultimate determination of whether Ms. Ortiviz is or should be found to be disabled.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED AND REMANDED.** Upon reconsideration, the Commissioner shall consider all pertinent evidence

10

through the 2017 hearing date.   Judgment shall enter in favor of Ms. Ortiviz.

Dated this 28th day of August, 2019.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge